58 CCPA

**LUZIER INCORPORATED, Appellant,**

**v.**

**MARLYN CHEMICAL CO., Inc.,**
**Appellee.**

**Patent Appeal No. 8524.**

United States Court of Customs
and Patent Appeals.

May 27, 1971.

Alfred T. Lee, Weil, Lee & Bergin, New York City, attorneys of record, for appellant.

Jack Y. Dinsmore, Shlesinger, Arkwright, Garvey & Dinsmore, Arlington, Va., attorneys of record, for appellee, Munson H. Lane, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and LANDIS,

Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board in a consolidated proceeding in which it dismissed two oppositions to applications to register trademarks on the Principal Register. Serial No. 234,220, filed December 8, 1965, asked registration of the word-mark LUMAR for "Powdered Fabric Softener." Serial No. 243,150, filed April 11, 1966, asked registration, as applied to the same goods, of a composite mark consisting of the fanciful representation of a "money tree" associated with the slogan "Using Lumar is like having your own money tree." The board's opinion is fully reported in 159 USPQ 620 and contains an illustration of the latter mark.[1] Familiarity with that opinion will be presumed.

Both parties took testimony, opposer-appellant relying primarily on its registration of the word-mark LUMAR for "massage cream," Reg. No. 821,278, issued December 27, 1966, on the Principal Register. The facts are not in dispute. Appellant is conceded to be the prior user, claiming first use in 1932 as against appellee's earliest claimed use in 1956.[2]

As to the mark LUMAR (Opposition No. 47,164), the marks of the parties are clearly identical in law, regardless of the present labeling practices. As to both parties and their products, this mark is an arbitrary mark, a coined, fanciful term entitled to protection as a "strong" mark. Nevertheless, the board found sufficient differences in the goods of the parties and their methods of marketing them to preclude, in its opinion, the likelihood of confusion, mistake, or deception. The gist of the board's reasoning is that opposer is basically a facial care cosmetic house selling its products through the house-to-house sales method, LUMAR massage cream having a price on the order of $5 per 4-ounce jar, while LUMAR powdered fabric softener is a product sold to commercial laundries in drums of from 50 to 275 pounds. On this state of facts the board found the goods to be "distinctly different" and placed a burden on opposer to "establish facts which would show that they are commercially related in such a manner that their sale under the marks here involved would be calculated to give rise to a likelihood of confusion in trade." The board found this had not been done. Perhaps one reason was that opposer made an argument it found to be "so obviously tenuous, if not incredible, that one must assume that opposer was in desperate straits when it seized upon this as a basis for supporting its position herein." The argument was that both opposer's and applicant's products are used to produce softening effects, one on skin the other on fabric. We agree with the board's feeling about this argument. We can also agree that under the parties' *present* marketing methods there is no likelihood of confusion etc. We nevertheless disagree with the board's ultimate conclusion.

There is nothing in opposer's registration nor in the description of goods in applicant's applications to restrict the goods to any price range, method of marketing, packaging quantities, or class of purchasers. They are both, speaking generally, chemical products. One is a cosmetic and the other a laundry product. While some cosmetic companies no doubt prefer the door-to-door selling method and limit themselves to it, it is notorious that cosmetics are

---

1. There is a slight discrepancy, not material here, between the representation of the slogan in the Patent Office drawing and the version printed in the board's opinion. The drawing is inconsistent with the specimen in spelling "like" with a capital "L."

2. These dates of first use are the dates claimed in the applications and in opposer's registration. There is some uncertainty about just when opposer started the use of the mark LUMAR in its present form, but, whenever it was, it was long prior to applicant's first use.

widely sold in stores of many types, from boutiques to supermarkets. While applicant may currently be selling its LUMAR fabric softener only to commercial laundries in large quantities, there is no assurance it will continue to do so, and it seeks registration without limitation as to how the product is sold. We can judicially notice that fabric softeners are in common household laundry product. Furthermore, the record in this case shows a minor excursion by applicant into the sale of its product in 4-ounce packages bearing the LUMAR mark through coin-operated vending machines in the familiar coin-operated laundries. The board seems to have given this no weight because such sales took place, as it said, only to a "very small degree" and were not accompanied by any promotional efforts by way of advertising directed to that class of trade. It is, in our view, a clear indication, however, of how there is a real likelihood—assuming changes in applicant's present sales methods—that LUMAR massage cream and LUMAR powdered fabric softener would be purchased by the same people, namely, housewives or bachelor girls interested in both soft skin and soft laundry. We cannot escape the conclusion that these products when sold under the identical, arbitrary word-mark would be assumed by a high percentage of purchasers, actual or potential, to have a common origin or at least a common merchandising sponsorship. Hence there would be a likelihood of confusion in that respect.

It is further our view that affirming the board in this case with the resulting grant of a registration to applicant of opposer's word-mark LUMAR might be an encouragement to applicant to promote the sale of its softener under this mark, as it once did, to the individual consumer of laundry products, as distinguished from commercial laundries, with a reasonable assurance of some consumer confusion. We therefore *reverse* the board's dismissal of Opposition No. 47,164 to application serial No. 234,220 to register the word LUMAR.

As to Opposition No. 46,967, all of the facts are the same except that we are dealing with another mark. The record shows that this is a composite mark which appears on the same labels with the word-mark LUMAR. It is being opposed because of its inclusion, in the slogan portion of the mark, of a reference to the word-mark in the phrase "Using Lumar is like having your own money tree." The word "Lumar" is the only portion of the mark in any way referring to or connected with the product. While the other portions of the mark are not likely in any way to cause confusion, we feel that the mark as a whole is infected by the presence of the word-mark "Lumar" in its slogan portion and that this opposition must be sustained for the same reasons above expressed in connection with the word-mark standing alone. Therefore we *reverse* the decision of the board in Opposition No. 46,967.

While we have often said that decisions in other trademark cases having different facts are not of much value as precedents, there is a case on which appellant relies to which this rubric does not apply, S. C. Johnson & Son, Inc. v. Procter & Gamble Co., 158 USPQ 676 (T.T.A.B.1968). There involved was the arbitrary word-mark FORWARD applied by applicant to a dentifrice and by opposer to all-purpose liquid cleaning preparations. Opposer marketed no toilet preparations and sold its FORWARD cleaner primarily for institutional use. Appellant here relied on the board's opinion in that case wherein the board said

> While opposer does not presently market any toilet goods it would appear to be logical that purchasers of both products might well believe that these products emanate from a common origin when sold under the identical mark "FORWARD."

Appellee's only comments on this decision are that it is sound but not pertinent here, apparently because appellee's fabric softener is said not to move through the same trade channels as op-

poser's LUMAR massage cream. We do not think that "movement through the same trade channels" is the controlling consideration if the goods may end up in the same purchaser's hands under conditions where that purchaser might logically suppose they had a common origin because of the use thereon of identical arbitrary trademarks. Purchasers may not be aware of the channels through which good ultimately reach them. On May 6, 1971, we affirmed the decision of the board in the FORWARD case, Procter and Gamble Co. v. S. C. Johnson & Son, Inc., 440 F.2d 1022, 58 CCPA. For similar reasons, the decision of the board here is reversed.

Reversed.

BALDWIN, J., disagrees in full.